ALAN MOMNEY, d/b/a/ Asher Auto Sales, Plaintiff-Appellee, v. JIM EDGAR, Secretary of State, Defendant-Appellant.

First District (1st Division)   No. 1—89—0875

Opinion filed December 10, 1990.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellant.

Anthony Sammarco, of Forest Park, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The Secretary of State (the Secretary) brings this appeal on the circuit court's decision reversing the Secretary's order which revoked the 1988 used vehicle dealer license of Alan J. Momney, doing business as Asher Auto Sales (plaintiff). The circuit court affirmed the Secretary's finding that plaintiff violated section 5—501(a) of the Illinois Vehicle Code (the Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 5—501(a)) by failing to maintain records at his place of business, but vacated the revocation sanction and imposed a six-month license suspension. No cross-appeal having been filed by plaintiff, the only issues before this court on the Secretary's appeal are whether the circuit court erred in vacating the administrative sanction and whether the circuit court had authority to reduce the administrative sanction.

Since 1974, plaintiff has operated the Asher automobile dealership at 2855 North Cicero in Chicago, Illinois. He was issued a 1988 Illinois "Dealer Certificate of Authority DL977" in 1988, authorizing him to deal in used vehicles. On July 30, 1988, the Secretary revoked plaintiff's license, finding that, on January 26, 1988, plaintiff failed to maintain an established place of business, failed to maintain required records of the acquisition and disposition of vehicles, and failed to produce evidence of his right to possess 23 vehicles on the premises in violation of sections 5—102(d) and 5—401.2 of the Code (Ill. Rev. Stat. 1987, ch. 95½, pars. 5—102(d), 5—401.2(a)(A)(4), (a)(A)(7), (a)(A)(8), (d)).

Prior to January 26, 1988, the Secretary's Sergeant Serafini visited plaintiff's place of business and examined plaintiff's police book—a ledger recording the acquisition and disposition of vehicles. He directed plaintiff to update the book's entries for disposition of automobiles. Plaintiff also was questioned, on approximately six occasions prior to January 26, 1988, regarding suspicions that he was giving favors to certain of the Secretary's investigators. On January 26, 1988, Serafini and another sergeant again questioned plaintiff regarding these suspicions and Serafini inspected plaintiff's police book. Following the interview and inspection, Ross Finnelly, an investigator for the Secretary, conducted a "routine" dealer inspection.

From plaintiff's police book, Finnelly noted 30 vehicles which were

listed as having been purchased and indicated no disposition. The 30 vehicles were not present on the lot. Plaintiff informed Finnelly that the vehicles had been sold and that the entries were not completed due to his sister's absence from work. Finnelly also discovered 33 vehicles on the lot for which plaintiff produced only 10 certificates of title. Plaintiff explained to Finnelly that some of the titles were at his mother's home and that others were at Insurers and Lenders Auto Auction, where they were being held until checks cleared on purchased vehicles. The investigators declined plaintiff's requests that they verify these facts.

At the administrative hearing, plaintiff explained that he did not keep his records at his place of business overnight because of frequent burglaries at his business. Before this incident, no complaint had been lodged against plaintiff in the 14 years he had operated Asher Auto Sales.

■ The Secretary first contends that the circuit court erred in vacating its order revoking plaintiff's license. Under section 5—501 of the Code, the license of a used vehicle dealer "may be denied, revoked or suspended" if the Secretary finds that the dealer has failed "to file or produce for [the Secretary] any application, report, document or other pertinent books, records, documents, letters, contracts, required to be filed or produced under [the] Code." (Ill. Rev. Stat. 1987, ch. 95½, par. 5—501(a)(6).) A reviewing court has authority to review a sanction imposed under this section pursuant to its authority to review questions of law presented by the record as provided in section 3—110 of the Administrative Review Law. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110; *Walter Spector Co. v. Illinois Liquor Control Comm'n* (1985), 133 Ill. App. 3d 95, 478 N.E.2d 635.) This authority, however, is limited to determining whether the agency acted unreasonably or arbitrarily or chose a sanction which is unrelated to the purpose of the statute. *Ballin Drugs, Inc. v. Department of Registration & Education* (1988), 166 Ill. App. 3d 520, 519 N.E.2d 1151.

In reaching its ruling, the circuit court noted that the "technical violation" related to "nothing more than sloppy bookkeeping" and that plaintiff's conduct did not adversely affect the public. The court also stated that no person could reasonably conclude that the record-keeping deficiencies were a "cover" for a stolen car operation, where 20 of the 30 vehicles listed on the "Notice of Hearing" were more than seven years old and only four were less than five years old. Plaintiff also points out on appeal that no consumers were defrauded and no evidence exists that plaintiff engaged in an illicit auto sales scheme.

■■ The purpose of section 5—501 is to protect the consumer, as

well as to prevent crime. (*Lindsey v. Edgar* (1984), 129 Ill. App. 3d 718, 473 N.E.2d 92.) This section's record-keeping requirements for automobile dealers protect consumers, not only from acts of fraud upon the public, but also from the perils of the inability to ascertain the prior ownership history of a purchased vehicle as a result of improper documentation of transactions by careless dealers. We do not agree, therefore, with the circuit court's characterization of the violation here as a "technical violation." Nonetheless, under the circumstances present here, we cannot conclude that the court erred in finding the revocation sanction to be unrelated to the purposes of the Code.

In allowing the Secretary to choose between the sanction of revocation and suspension, the legislature recognized that sanctions less severe than the ultimate revocation sanction would further the purposes of the Code in certain instances. The record here discloses no indication of an illicit auto sales scheme. Plaintiff's offered explanations for his failure to have the certificates of title and books at his place of business, albeit not excusing his failures, were potential mitigating circumstances which the State investigators made no efforts to verify. The record further indicates that plaintiff operated his auto sales business for 14 years before this incident without having been charged with any activity sanctionable under the Code. We agree that, under these circumstances, the sanction of revocation is not related to the purposes of the statute.

The Secretary next contends that the circuit court lacked authority to impose its own sanction on plaintiff's violation. It is established that the scope of a circuit court's statutorily granted authority to review an administrative decision is limited to those powers expressly delegated by the legislature. (*Admek v. Civil Service Comm'n* (1958), 17 Ill. App. 2d 11, 149 N.E.2d 466.) The Administrative Review Law grants the circuit court the power to "affirm or reverse the decision in whole or in part" and, in the event of an agency hearing, to state the questions requiring further hearing or proceedings on remand (Ill. Rev. Stat. 1987, ch. 110, pars. 3—111(a)(5), (a)(6)), but is silent as to the court's power to modify a penalty imposed by the agency. A long line of authorities, however, have held that the determination of the appropriate sanction is one to be made by the agency, not the courts. (See, *e.g.*, *Citrano v. Department of Registration & Education* (1980), 90 Ill. App. 3d 937, 414 N.E.2d 74; *Epstein v. Civil Service Comm'n* (1977), 47 Ill. App. 3d 81, 361 N.E.2d 782.) Despite acknowledgement of these authorities, plaintiff asserts that the circuit court had authority to reduce the sanction here.

30

The cases cited by the circuit court in its memorandum opinion as supporting the judicial reduction of administrative sanctions, in fact, bolster the Secretary's position. None of the courts in these cases reduced a sanction imposed by an administrative agency. (See *Fox v. Civil Service Comm'n* (1978), 66 Ill. App. 3d 381, 383 N.E.2d 1201; *Kirsch v. Rochford* (1977), 55 Ill. App. 3d 1042, 371 N.E.2d 899; *Parkhill v. Civil Service Comm'n* (1978), 58 Ill. App. 3d 291, 374 N.E.2d 254; *Kreiser v. Police Board* (1976), 40 Ill. App. 3d 436, 352 N.E.2d 389; *Caliendo v. Goodrich* (1975), 34 Ill. App. 3d 1072, 340 N.E.2d 560.) Contrarily, in *Fox* (66 Ill. App. 3d 381, 383 N.E.2d 1201), the court, upon reversing the administrative sanction imposed in the case before it, stated that the suitable alternative punishment to be imposed was beyond its province.

Accordingly, the six-month suspension order imposed by the circuit court is vacated, and the case is remanded to the administrative agency for further proceedings consistent with this opinion.

Affirmed in part; reversed in part, and remanded.

O'CONNOR and MANNING, JJ., concur.