INNO U. OBASI, Plaintiff-Appellant, v. THE DEPARTMENT OF PROFESSIONAL REGULATION *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—92—1430

Opinion filed August 19, 1994.

James K. Leven, of Northfield, for appellant.

Roland Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Jerald S. Post, Assistant Attorney General, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

This administrative review action was brought by the plaintiff, Inno U. Obasi, M.D., against the Illinois Department of Professional Regulation (the Department) and its Director to contest the revocation of the plaintiff's medical license, without opportunity to apply for reinstatement for five years. The circuit court affirmed the revocation and the plaintiff appealed.

The issues presented for review are: whether the trial court applied the correct review standards when it affirmed the Department's findings and conclusions; whether the plaintiff's due process rights were violated when television cameras were permitted at the hearing; whether the Medical Practice Act of 1987 (the Act) (Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 et seq. (now 225 ILCS 60/1 et seq. (West 1992))) was unconstitutional because it violated the separation of powers doctrine; and whether the sanction imposed on the plaintiff should have been reduced by the trial court because it was overly harsh.

BACKGROUND

The Department Director summarily suspended the plaintiff's medical license on October 25, 1989, and charged in a five-count complaint that the plaintiff had violated various provisions of the Medical Practice Act of 1987. The first two counts of the complaint alleged that on June 6, 1989, the plaintiff, a licensed physician and surgeon, performed a pregnancy termination procedure, a dilatation and evacuation, on Krystal S. and perforated her uterus during the procedure. The charges stated that the plaintiff had failed to provide postoperative care and monitoring and that his actions constituted patient abandonment and gross negligence in violation of sections 22(16) and 22(4) of the Act (Ill. Rev. Stat. 1987, ch. 111, pars. 4400—22(16), (4) (now 225 ILCS 60/22(16), (4) (West 1992))).

The third count of the complaint alleged that the plaintiff violated section 22(4) of the Act and committed gross negligence on September 7, 1989, when he performed a dilatation and curettage and tubal ligation on Synthia D. According to the allegations, the plaintiff failed to differentiate between the fallopian tube and the uterine vein, or artery, or their branches; severed the vein, artery or branch and failed to repair it; and carelessly, negligently, and/or recklessly cared for and treated Synthia D. who, as a direct and

proximate result of these acts, died. The fourth count of the complaint alleged that the plaintiff committed a third act of gross negligence on September 21, 1989, when he performed a pregnancy termination procedure, a dilatation and evacuation, on Michelle P. During this procedure, the patient's uterus was perforated, requiring emergency surgery and a total abdominal hysterectomy. The final count of the complaint incorporated counts I, III and IV and alleged that the acts recited constituted a pattern of practice which demonstrated incapacity or incompetence to practice medicine in violation of section 22(26) of the Act (Ill. Rev. Stat. 1987, ch. 111, par. 4400—22(26) (now 225 ILCS 60/22(26) (West 1992))).

On April 10, 1990, following a hearing before the Illinois State Medical Disciplinary Board, the hearing officer concluded that the Department had proved by clear and convincing evidence the charges in count I (patient abandonment), count III (gross negligence) and count V (pattern of practice demonstrating incompetence to practice). The hearing officer recommended revocation of the plaintiff's medical license; and the Medical Disciplinary Board adopted the report and recommendations of the hearing officer. The Board recommended to the Department Director that the plaintiff not petition for restoration of his license for a minimum period of five years and that the plaintiff complete 250 hours of continuing medical education and pass a clinical competency examination. The Director adopted the Board's recommendations on June 12, 1990.

The plaintiff filed a complaint for administrative review; and on February 22, 1991, at the conclusion of the hearing, the circuit court affirmed the plaintiff's license revocation but reduced the period of revocation to 30 months. On March 8, 1991, the court reversed its oral ruling of February 22, 1991, and found that it was without authority to lessen the sanction imposed by the Department. On June 14, 1991, pursuant to the plaintiff's motion to reconsider, the trial court remanded the case to the Department for reconsideration of the sanction imposed, finding that the sanction was excessive and oppressive. On remand, the Department adopted the Board's findings, conclusions and recommendations; reaffirmed the five-year revocation period; and eliminated the educational and competency examination requirements. Pursuant to administrative review of that order, the circuit court affirmed the Department and subsequently denied the plaintiff's motion to reconsider.

While a number of findings were made by the hearing officer for the Medical Disciplinary Board, those that need to be repeated in order to understand the rationale of this court concern the evidence presented on the charge of abandonment. As to this charge, the hearing officer's findings included the following:

"4. Approximately one hour after the procedure, Dr. Obasi discharged Krystal S[.] and left the facility. At the time of the discharge Krystal S[.] was exhibiting no symptoms of a perforated uterus or internal bleeding.

5. Dr. Obasi had lunch and then went grocery shopping. While shopping he was paged on his beeper and returned to the Paulina Surgi-Center after talking to a nurse, Caroline Banjo.

6. Dr. Obasi ordered Nurse Banjo to start an I.V. of Pitocin to help S[.]'s uterus contract and to call for an ambulance.

7. A Chicago Fire Department ambulance arrived and transported Krystal S[.] to St. Francis Hospital. Dr. Obasi did not accompany the patient to St. Francis Hospital.

8. Dr. Obasi did not have any staff privileges at St. Francis Hospital.

9. No records were sent to St. Francis Hospital with Krystal S.

10. Dr. Obasi did not attempt to contact St. Francis Hospital until two hours after the ambulance left the Paulina Surgi-Center.

11. Dr. Obasi finally spoke with Dr. Sella, S[.]'s attending physician at St. Francis Hospital, on June 7, 1989 at approximately 4:00 p.m."

The evidence to support the hearing officer's findings enumerated above came from the testimony of the plaintiff, Doctor Obasi. During the course of his testimony, Doctor Obasi stated that on June 6, 1989, he performed a dilatation and evacuation on Krystal S. and that she had tolerated the procedure well except that she had moved while he was using a suctioning cup. Doctor Obasi examined her in the recovery room and found that she was not experiencing any unusual problems. He testified that there did not appear to be anything wrong with her blood pressure, respiration or other vital signs. He wrote "discharge home," assuming the normal recovery period of 45 minutes to 1 hour, on her progress note and left the clinic to have lunch and shop at a grocery store several blocks away.

The plaintiff further testified that, while shopping, his beeper sounded and he telephoned the clinic. He learned that Krystal had developed symptoms of a perforated uterus just before changing into her clothes. Doctor Obasi told the nurse to start intravenous medication, to massage the uterus and to call an ambulance. He immediately returned to the center, conducted a pelvic examination upon Krystal, massaged the uterus and again asked the nurse to call an ambulance. When the ambulance crew arrived, he assisted in transferring Krystal onto the ambulance stretcher. Doctor Obasi stated that he did not accompany Krystal to the hospital because he did not have staff privileges there and would not be allowed to participate in any form of treatment there.

Doctor Obasi testified that as part of standard procedure he usually would make a note to inform the medical staff at the hospital to which one of his patients is transferred. He stated that he made such a note with respect to Krystal, that he gave the note to his nurse to make a copy, and that the note he gave to the nurse was to be given to the ambulance crew. He did not know whether the original note or a copy of the note was given to any of the ambulance personnel.

Doctor Obasi waited for about two hours before calling the hospital so that the hospital would have time to stabilize the patient. He spoke with a telephone operator at the hospital, learned the identity of her attending physician, and spoke to someone in the emergency room. Doctor Obasi stated he had the attending physician paged several times and also left a message at her office for her to call him back. The attending physician called him back the next day.

The only other testimony at the hearing regarding the plaintiff's care of Krystal S. was given by Doctor Allan Charles, the Department's expert. Doctor Charles' testimony concerned the cause, likelihood, and symptoms of a perforated uterus. He stated that a patient who was in stable condition and not experiencing unusual pain could be discharged after one hour in the recovery room. He stated that such a patient could exhibit signs of a perforated uterus after she was discharged. Doctor Charles testified that it would not be patient abandonment for a doctor to discharge a patient after one hour in a recovery room if the patient's vital signs were stable and the patient did not exhibit any symptoms of uterine perforation. He further testified that it would not be patient abandonment for a doctor, after that hour of the patient being in a recovery room, to leave the clinic where the medical procedure took place and to return immediately upon being beeped by the clinic and informed that the patient was not feeling well.

Based on this testimony, the hearing officer for the Medical Disciplinary Board made the findings of fact enumerated above. He concluded that the Department proved by clear and convincing evidence that Doctor Obasi abandoned Krystal S. "in that he did not immediately follow up her care with the staff at St. Francis Hospital after Chicago Fire Department paramedics transferred her there."

As discussed in *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 606 N.E.2d 1111, judicial review of the Department's decision extends to all questions of law and fact presented by the entire record. (See also Ill. Rev. Stat. 1987, ch. 110, par. 3—110 (now 735 ILCS 5/3—110 (West 1992)).) The findings and conclusions of the administrative agency on questions of fact shall be

held to be *prima facie* true and correct. (*Abrahamson*, 153 Ill. 2d at 88, quoting Ill. Rev. Stat. 1987, ch. 110, par. 3—110; see also *Launius v. Board of Fire & Police Commissioners* (1992), 151 Ill. 2d 419, 603 N.E.2d 477.) The *Abrahamson* court further stated:

> "[I]t is not a court's function to reweigh the evidence or make an independent determination of the facts. Rather, the court's function is to ascertain whether the findings and decision of the agency are against the manifest weight of the evidence. [Citations.] An administrative agency decision is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. [Citations.]
>
> The mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings. [Citation.] The reviewing court may not substitute its judgment for that of the administrative agency. [Citation.] If the record contains evidence to support the agency's decision, it should be affirmed. [Citations.]" *Abrahamson*, 153 Ill. 2d at 88-89, 606 N.E.2d at 1117.

With respect to the undisputed facts and the Department's conclusions drawn therefrom, a different standard of review must be applied. The legal effect given to undisputed facts is a matter of law reviewable by an appellate tribunal, and a reviewing court is not bound by either an agency's or circuit court's conclusions of law. (*E.g., Walgreen Co. v. Selcke* (1992), 230 Ill. App. 3d 442, 595 N.E.2d 89; *Pepsi-Cola General Bottlers, Inc. v. Illinois Human Rights Comm'n* (1985), 137 Ill. App. 3d 288, 484 N.E.2d 538.) Deference is not to be given to an agency's legal conclusions because they involve administrative interpretation of a statute it is charged with enforcing when the court finds that the legal conclusions reached by the agency are erroneous. (*Walgreen*, 230 Ill. App. 3d 442, 595 N.E.2d 89; *cf. Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 447 N.E.2d 295 (deference to agency interpretation of ambiguous statute).) The proper standard of review for an agency's conclusions is not the manifest weight of the evidence test but whether the agency's decision is arbitrary, unreasonable and not supported by sufficient evidence. See *Kappel v. Police Board* (1991), 220 Ill. App. 3d 580, 580 N.E.2d 1314; *Letourneau v. Department of Registration & Education* (1991), 212 Ill. App. 3d 717, 571 N.E.2d 783.

It has been held that an agency's decision is not supported by sufficient evidence where there is an absence of expert testimony. In *Farney v. Anderson* (1978), 56 Ill. App. 3d 677, 372 N.E.2d 151, the appellate court affirmed the trial court's reversal of the agency's suspension of the plaintiff's medical license because the agency failed to present expert testimony relating to the charge of engaging in

dishonorable, unethical or unprofessional conduct. The court in *Farney* quoted from *Smith v. Department of Registration & Education* (1952), 412 Ill. 332, 106 N.E.2d 722, as follows:

> " 'The record is completely silent as to any expert testimony relating to the respondent's professional conduct ***. The medical hearing committee undertook to draw upon their own professional skill and scientific training to produce the findings entered against the respondent herein.' " (*Farney*, 56 Ill. App. 3d at 681, 372 N.E.2d at 153, quoting *Smith*, 412 Ill. at 346, 106 N.E.2d at 729.)

The *Farney* court explained the need for expert testimony as follows:

> "The underlying, but perhaps unspoken, reason for requiring expert evidence by the Department is the existence of judicial review of the decisions of the Medical Disciplinary Board ***. While it may seem idle and foolish to a board composed of physicians to present elementary questions of medicine to them by way of testimony of one of their own brethren, yet it is far from idle to a court, not trained in medicine, which is called upon to determine the manifest weight of the evidence. ***
>
> *** Expert testimony, whether coming down on the positive or negative side of Farney's treatment, is essential." (56 Ill. App. 3d at 682, 372 N.E.2d at 154.)

Concluding that the substitution of subjective analysis on the part of the medical panel in place of expert medical opinion fatally tainted the proceedings, the court affirmed the trial court's reversal of the license suspension.

■ Applying these principles to the instant case, we find that the charge of abandonment was not supported by sufficient evidence and that the trial court erred when it affirmed the Department's conclusion that patient abandonment had occurred. As noted above, the hearing officer concluded that there had been an abandonment because Doctor Obasi "did not immediately follow up [Krystal S.'s] care with the staff at St. Francis Hospital after *** paramedics transferred her there." The Department presented no expert testimony relating to Doctor Obasi's post-operative care of Krystal S. once she was transferred to the ambulance and transported to the hospital. The only opinion as to the existence of patient abandonment was elicited from Doctor Charles, the Department's expert, by Doctor Obasi's counsel on cross-examination. Two hypothetical questions were posed to Doctor Charles, and they concerned the discharge of a patient who had normal vital signs and who was not exhibiting any symptoms of a perforated uterus. In response to both hypothetical questions, Doctor Charles answered that there was no patient abandonment. No expert testimony stated that Doctor Obasi's failure to contact the hospital for two hours after the ambulance left the

medical center and his inability to reach the treating physician until the next day constituted patient abandonment.

Absent sufficient evidence, and absent our willingness to hold, as a matter of law and independent of expert testimony, that the plaintiff's actions constituted patient abandonment, the hearing officer's conclusion, and the adoption of this conclusion by the Medical Disciplinary Board and the Department Director, was arbitrary and unreasonable. We reverse the trial court's affirmance of the finding of abandonment.

■ With respect to remaining charges that were sustained by the Department and affirmed by the trial court, a discussion of the testimony would serve no useful purpose. We have reviewed the record, and we hold that the hearing officer's findings regarding gross negligence as to the plaintiff's treatment of Synthia D. and the pattern of practice demonstrating incompetence based on the plaintiff's treatment of all three women were clearly not against the manifest weight of the evidence. We also hold that the Department's conclusions of law were supported by competent evidence, including expert testimony, and that they were not arbitrary or unreasonable. The trial court's affirmance of the Department's findings and conclusions regarding the remaining charges was correct.

The plaintiff's second argument raises the issue of whether the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400—1 *et seq.* (now 225 ILCS 60/1 *et seq.* (West 1992))) is unconstitutional because it violates the separation of powers doctrine. The plaintiff contends that the Act improperly delegates judicial power to nonjudicial officers, namely, the hearing officer, members of the Medical Disciplinary Board, and the Department Director.

In upholding the Environmental Protection Act's penalty provisions and finding that those provisions did not violate the separation of powers provisions of the Illinois Constitution (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(b), 1042 (now 415 ILCS 5/33(b), 5/42 (West 1992))), the Illinois Supreme Court stated that the separation of powers doctrine does not forbid every exercise of functions by one branch of government which conventionally is exercised by another branch. (*City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 311 N.E.2d 146.) It recognized that the very identifying badge of an administrative agency is the combination of judicial power and legislative power. The court further stated:

> " 'As a general rule, delegation to administrators or agencies of the quasi-judicial power to adjudicate rights or to revoke privileges such as licenses is not invalid so long as there is an opportunity for judicial review of the administrative action. *** In

short, if the judiciary is given an adequate opportunity to review what has been done, the principle of separation of powers—or due process of law, if you will—is generally satisfied.' " 57 Ill. 2d at 181-82, 311 N.E.2d at 152, quoting G. Braden & R. Cohn, Illinois Constitution: An Annotated and Comparative Analysis 104-05 (1969).

■ Applying the principles espoused in *City of Waukegan v. Pollution Control Board*, we find that the Medical Practice Act of 1987 is not violative of the separation of powers doctrine. The Act separates the investigative and prosecuting functions performed by the Department from the adjudicatory functions performed by the Medical Disciplinary Board. The Act requires notice to be given to the physician of the charges made (Ill. Rev. Stat. 1987, ch. 111, par. 4400—36 (now 225 ILCS 60/36 (West 1992))) and provides for a public hearing to present statements, testimony, evidence and argument pertinent to the charges (Ill. Rev. Stat. 1987, ch. 111, par. 4400—37 (now 225 ILCS 60/37 (West 1992))). Finally, the Act provides that all final administrative decisions of the Department are subject to judicial review pursuant to the provisions of the Administrative Review Law (Ill. Rev. Stat. 1987, ch. 110, par. 3—101 *et seq.* (now 735 ILCS 5/3—101 *et seq.* (West 1992))). (Ill. Rev. Stat. 1987, ch. 111, par. 4400—41 (now 225 ILCS 60/41 (West 1992)).) Not only is the Medical Practice Act of 1987 in compliance with the separation of powers doctrine, but our supreme court has found that the Act complies with the constitutional requirements of due process. See *Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 606 N.E.2d 1111.

The plaintiff's third argument on appeal is that he was denied due process because television cameras were present during portions of the administrative hearing. The Department contends that this rule was not violated because Doctor Obasi did not invoke his right to have the cameras turned off while he testified. The trial court rejected plaintiff's argument apparently on the basis of an incomplete record.

In administrative matters, due process is satisfied when the party concerned is provided an opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute. (*Goranson v. Department of Registration & Education* (1980), 92 Ill. App. 3d 496, 415 N.E.2d 1249; see also *Desai v. Metropolitan Sanitary District of Greater Chicago* (1984), 125 Ill. App. 3d 1031, 466 N.E.2d 1045.) To assure that a fair hearing is afforded, the hearing officer has broad discretion to regulate attendance at the hearing and has inherent power to do so to preserve order and decorum. (*Klein v.*

*Board of Fire & Police Commissioners* (1974), 23 Ill. App. 3d 201, 318 N.E.2d 726.) With respect to the recording of administrative proceedings conducted by the Department of Professional Regulation, the hearing officer is guided further by sections 1120.30 and 1120.40 of the Illinois Administrative Code (68 Ill. Adm. Code §§ 1120.30, 1120.40 (1988 Supp.)). Those sections provide:

"Section 1120.30 Proceedings May Be Recorded

Proceedings at meetings and hearings required to be open to the public by the 'Open Meetings Act' may be recorded by any person, by tape, film or other means." 68 Ill. Adm. Code § 1120.30 (1988 Supp.).

"Section 1120.40 Witness Refusal

If a witness at any meeting or hearing of the Department refuses to testify on the grounds that he may not be compelled to testify if any portion of his testimony is to be broadcast or televised *** the presiding officer shall prohibit such recording during the testimony of the witness." 68 Ill. Adm. Code § 1120.40 (1988 Supp.).

See also Ill. Rev. Stat. 1987, ch. 110, par. 8—701 (now 735 ILCS 5/8—701 (West 1992)).

■ A review of the record in the instant case shows that two objections were made to the presence of the television cameras during the plaintiff's administrative hearing. The first one occurred at the beginning at the hearing when the hearing officer asked plaintiff's counsel whether he had any objection to the television cameras. Plaintiff's counsel raised a general objection arguing that a "circus-like atmosphere" could occur. This general objection was overruled, and no clarification was sought by the plaintiff. Subsequently, another witness did object to the cameras when she was called to testify, and the hearing officer ordered that the cameras be turned off.

We reject the plaintiff's due process argument on two grounds. First, as plaintiff did not invoke his personal right to have the cameras turned off during his testimony, he waived any alleged error in this regard. (See *Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660; *Borowicz v. Seuring Transit Co.* (1968), 98 Ill. App. 2d 326, 240 N.E.2d 314 (waiver when no objection at appropriate time).) We also reject plaintiff's argument because he has not argued nor does the record demonstrate that the presence of television cameras at various times during the proceedings impeded the hearing, disrupted the calm atmosphere or imposed additional burdens upon the Medical Disciplinary Board which it could not handle. *Klein*, 23 Ill. App. 3d 201, 318 N.E.2d 726.

The final argument raised in this appeal concerns the sanction

imposed and whether the trial court erred when it ruled that it did not have the power to reduce the sanction imposed by the Department.

While a reviewing court must defer to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest (*Abrahamson*, 153 Ill. 2d 76, 606 N.E.2d 1111), a reviewing court has authority to review a sanction imposed (*Momney v. Edgar* (1990), 207 Ill. App. 3d 26, 565 N.E.2d 246). The test is not whether the reviewing court would have imposed a lesser sanction if it were making the decision in the first instance, but whether, in view of the circumstances, the agency acted unreasonably or arbitrarily. (*Pelling v. Illinois Racing Board* (1991), 214 Ill. App. 3d 675, 574 N.E.2d 116.) If the reviewing court finds that the sanction is unreasonable, it cannot modify the sanction; rather, the court must remand to the agency for further proceedings consistent with the court's expressed opinion. *Momney*, 207 Ill. App. 3d 26, 565 N.E.2d 246.

In the instant case, on first review, the trial court found that the sanction imposed was "excessive and oppressive" and reduced the period of revocation from 5 years to 30 months. The court subsequently reversed itself, when it ruled on plaintiff's motion to reconsider, and held that it was without authority to lessen the sanction. The court did, however, remand the case to the Department for reconsideration of the sanction imposed. On remand, the Medical Disciplinary Board reaffirmed the five-year revocation period but eliminated the educational and competency examination requirements; and the Director adopted this recommendation. On administrative review of this order, the circuit court affirmed the Department.

■ The trial court's rulings with respect to the sanction imposed on the plaintiff were correct. The court found the initial sanction to be excessive, and this was within its authority to do. Although the court initially ordered an alternative sanction and reduced the revocation period from 5 years to 30 months, on reconsideration, the court correctly held that it was without power to do this. Instead, the court remanded the case to the Department for its reconsideration of the appropriate sanction. The Department reaffirmed the five-year revocation period but eliminated the educational and competency examination requirements that were originally imposed. The trial court affirmed. We cannot say that this latter affirmance was erroneous nor does our own review of the sanction lead to a conclusion that the sanction was arbitrary or capricious (*Pelling*, 214 Ill. App. 3d 675, 574 N.E.2d 116). Furthermore, in view of our reversal on the charge of abandonment, we defer to the Department's expertise and experi-

ence (*Abrahamson*, 153 Ill. 2d 76, 606 N.E.2d 1111), and remand the case to the Department for a determination of whether the same or a reduced sanction should be imposed.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

McNULTY and COUSINS, JJ., concur.