SIXTH DIVISION
January 19, 2007

No. 1-04-2249

| | | |
|---|---|---|
| MJ ONTARIO, INC., an Illinois Corporation, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 03 CH 13213 |
| | ) | |
| RICHARD M. DALEY, as Mayor of the City of | ) | Honorable |
| Chicago and Local Liquor Control Commissioner, | ) | David R. Donnersberger, |
| the LOCAL LIQUOR CONTROL COMMISSION | ) | Judge Presiding. |
| OF THE CITY OF CHICAGO, the MAYOR'S | ) | |
| LICENSE COMMISSION OF THE CITY OF | ) | |
| CHICAGO, SCOTT V. BRUNER, as DIRECTOR | ) | |
| of the MAYOR'S LICENSE COMMISSION OF | ) | |
| THE CITY OF CHICAGO, the CITY OF | ) | |
| CHICAGO, a Municipal Corporation, the | ) | |
| LICENSE APPEAL COMMISSION OF THE | ) | |
| CITY OF CHICAGO, ANTHONY CALABRESE, | ) | |
| as Chairman of the License Appeal Commission, | ) | |
| IRVING KOPPEL and DONALD ADAMS, as | ) | |
| Commissioners of the License Appeal Commission, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiff MJ Ontario, Inc., an Illinois corporation (plaintiff or MJ Ontario), sought

administrative review in the circuit court of Cook County of a decision by the defendant License

Appeal Commission of the City of Chicago (LAC), which, after a hearing, affirmed an order by

the defendant Local Liquor Control Commission of the City of Chicago (LLCC)[1] denying

plaintiff's application for a late-hour liquor license.  The circuit court upheld the LAC's decision.

_____

[1] We refer to the defendants LAC and LLCC specifically where necessary; however, we

refer to defendants generally as "the City."

1-04-2249

Plaintiff appeals, contending the LAC improperly construed the ordinance concerning the issuance of late-hour liquor licenses and improperly admitted certain evidence at the hearing. Plaintiff contends, in the alternate, that the LAC's findings were arbitrary, unreasonable, and unsupported by sufficient evidence. We affirm.

MJ Ontario is located at 224 West Ontario Street, which is near the intersection of Franklin and Ontario Streets in Chicago. Plaintiff applied for and was granted a liquor license. It also applied for a late-hour license to extend the time it is allowed to serve alcoholic beverages on the premises, seeking to do so for an additional two hours, *i.e.*, until 4 a.m. on Monday through Saturday and until 5 a.m. on Sunday.

On October 21, 2002, the former director of the LLCC, Winston Mardis (Director),[2] issued an order denying the application from MJ Ontario and Mark Jurczyk, president of MJ Ontario, for a late-hour liquor license. The order stated that, upon consideration of police department "review & reports" and the written objections of the alderman where the premises are located, the Director found the public interest would be served by denying the license. The order also stated that the area had been "plagued with numerous problems including: noise, litter and other problems which endanger and disrupt the local community."[3] Additionally, it contained the Director's further finding that granting a license would have a deleterious impact on the health,

---

[2] A motion has been granted changing the caption of the case to reflect Scott Bruner as the current Director of the Mayor's License Commission of the City of Chicago.

[3] The order noted that a late-hour license had already been issued for premises at 226 W. Ontario, next door to the applicant.

1-04-2249

safety and welfare of the surrounding community.

Plaintiff appealed the denial of the application to the LAC, which held a hearing on the application on March 18, 2003. At the hearing, the LLCC presented three witnesses: Alderman Burton Natarus, Chicago police lieutenant Robert Cooper, and area resident Mary Ellen Rosemeyer, who testified personally and on behalf of the River North Residents Association. Jurczyk, the owner of MJ Ontario, testified for plaintiff, as did Alderman Theodore Matlak, who represents a ward where Jurczyk's other club property is located, and by stipulation, Morene Dunn, the representative of another area association. We briefly summarize the testimony.

Alderman Natarus testified that 224 W. Ontario is located within the 42nd ward, which he has represented for 32 years. He testified as to his impressions of traffic congestion around the location, his observations of heavy late-night traffic in the area at another nightclub, and the overcrowding due to the mass exodus of cars from Ontario Street after 5 a.m. on weekends that resulted in a public safety problem. The alderman testified that he lived four blocks from the location of MJ Ontario, he walked the streets of his ward late at night, and was extremely concerned about overcrowding in nightclubs since the E2 nightclub incident. Alderman Natarus personally observed fights, crowds of inebriated people, and individuals soliciting sex and controlled substances around 224 W. Ontario.

By agreement, a letter Alderman Natarus had written in objection to the late-hour license was considered as substantive evidence. In the letter, the alderman expressed his opinion that the issuance of such license would increase noise and litter, and adversely affect public safety.

Lieutenant Cooper testified that he had been a Chicago police officer for more than 30

years, and for the last 10 years, he had been assigned to the district encompassing the MJ Ontario location, working the overnight shift. He testified that the issuance of a late-hour license would create problems for the police department, since the department operates after 2 a.m. in that district with a skeleton crew and there are dramatically fewer officers available to respond to calls. Officers who respond to calls involving complaints of "drunk and disorderly" behavior are kept from answering emergency calls. The lieutenant testified that, after 2 a.m., manpower for the district decreases by 50%; he noted that bar patrons who are unruly at 2 a.m. become even more so by 4 a.m., and that the issuance of a 4 a.m. license would attract a greater criminal element to the area.

Lieutenant Cooper further testified that he and his district commander, Joseph Griffin, speak several times during the week and have discussed the late-hour license. Lieutenant Cooper testified that he was there to represent the police department and Commander Griffin, and that Commander Griffin opposed the issuance of the license. Based upon his own experience as a police officer, Lieutenant Cooper also opposed the late-hour license.

Over objection, Lieutenant Cooper testified that the City's Exhibit No. 2 was a memorandum summarizing calls for service that the police department had received between 8 p.m. and 6 a.m. in the immediate vicinity of MJ Ontario over a period of about eight months, from July 1, 2002, through March 5, 2003. The document was prepared at his direction in preparation for the hearing and reflected numerous calls in a the one-block radius of the Franklin-Ontario intersection; the calls included criminal damage, parking complaints, reckless conduct, robbery, deceptive practices, and theft. The LAC admitted the document over objection to "clarify and

support" Lieutenant Cooper's opinion.

Rosemeyer, who is the attorney for the River North Residents Association, testified in opposition to issuance of the late-hour license. She further testified that, for almost 10 years, she has lived several blocks away from 224 W. Ontario. Over plaintiff's objection, Rosemeyer testified as to the concerns and objection of the River North Residents Association to the issuance of the license. The City then rested.

For plaintiff, Alderman Matlak testified that he went often to Jurczyk's other club. He believed Jurczyk was a responsible licensee and a good business person.

Jurczyk testified on his own behalf, in support of the issuance of the license. He said he operated the previously mentioned club in Alderman Matlak's ward and he was renovating 224 W. Ontario with plans to institute a $20 cover charge and serve expensive wines (a bottle of which would cost, on average, about $300). Jurczyk also testified the premises would be 4,500 square feet and have a capacity of 217 people.

Both sides agreed by stipulation that, if called, Morene Dunn would testify that she is the executive director of the River North Association, a group representing area businesses, and that the association was in favor of the issuance of a late-hour license to 224 W. Ontario and she believed it would not deleteriously impact the community.

On July 30, 2003, the LAC issued an order affirming the LLCC's denial of the application for a late-hour liquor license. Shortly thereafter, plaintiff filed a petition for rehearing, which the LAC denied.

On August 8, 2003, MJ Ontario filed a complaint for administrative review of the denial of

its application. On February 6, 2004, the court issued an order upholding the denial of the late-hour license. Plaintiff subsequently filed a motion for reconsideration. On July 16, 2004, the court denied the motion.

Plaintiff now appeals the orders of February 6 and July 16, 2004.

On appeal, plaintiff first contends that the LAC improperly construed the section of the ordinance concerning the issuance of late-hour liquor licenses. According to plaintiff, under the ordinance the LAC was required to prove that the issuance of a late-hour license would cause a deleterious impact to the surrounding community, but, plaintiff further claims, the LAC failed to meet its burden because it failed to present relevant evidence.

The parties disagree as to the appropriate standard of review. Plaintiff claims that, as a question of an administrative agency's interpretation of an ordinance, review is *de novo*. Although the City does not disagree that a question of statutory interpretation presents a question of law, which is subject to *de novo* review, it contends that here, however, there is no question of law at issue. Rather, the City maintains that plaintiff in fact challenges the LAC's finding of deleterious impact, which is subject to review under a standard of manifest weight of the evidence. We agree with the City.

Initially, we note that this court reviews the administrative agency's final decision and not the decision of the circuit court. See Gounaris v. City of Chicago, 321 Ill. App. 3d 487, 491, 747 N.E.2d 1025 (2001).

In the instant case, the Liquor Control Act of 1934 (235 ILCS 5/7-11 (West 2002)) provides that judicial review of all final administrative decisions be pursuant to the Administrative

1-04-2249

Review Law (735 ILCS 5/3-101 *et seq.* (West 2002)).  The latter statute provides that judicial review extends to all questions of law and fact presented by the entire record.  735 ILCS 5/3-110 (West 2002); Abrahamson v. Illinois Department of Professional Regulation, 153 Ill. 2d 76, 88, 606 N.E.2d 1111 (1992).

The standard applied on review of an agency's decision depends upon whether the issue presented is one of fact or of law.  Carpetland U.S.A., Inc. v. Illinois Department of Employment Security, 201 Ill. 2d 351, 369, 776 N.E.2d 166 (2002).  Where the agency's decision involves a pure question of law, the decision is reviewed *de novo*.  Carpetland U.S.A., Inc., 201 Ill. 2d at 369; Daley v. License Appeal Comm'n, 311 Ill. App. 3d 194, 201, 724 N.E.2d 214 (1999).  On the other hand, review of purely factual findings made by an administrative agency is conducted under a manifest weight of the evidence standard.  Carpetland U.S.A., Inc., 201 Ill. 2d at 369.  Under such review, the agency's findings and conclusions on questions of fact are entitled to deference, being deemed *prima facie* true and correct.  See 735 ILCS 5/3-110 (West 2002); Carpetland U.S.A., Inc., 201 Ill. 2d at 369; City of Belvidere v. Illinois State Labor Relations Board, 181 Ill. 2d 191, 204, 692 N.E.2d 295 (1998).

A reviewing court may not substitute its own judgment for that of the agency, nor does it reweigh the evidence or make an independent determination of the facts; instead, it should inquire whether the findings of the agency are against the manifest weight of the evidence.  Abrahamson, 153 Ill. 2d at 88; Launius v. Board of Fire & Police Commissioners, 151 Ill. 2d 419, 427, 603 N.E.2d 477 (1992).  An administrative agency's decision is against the manifest weight of the evidence only when the opposite conclusion is clearly evident.  Abrahamson, 153 Ill. 2d at 88.

However, the "mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently" does not justify reversal of the agency's decision. Abrahamson, 153 Ill. 2d at 88. If there is evidence in the record supporting the administrative agency's decision, it should be affirmed. Abrahamson, 153 Ill. 2d at 88; O'Neill v. Rodriguez, 298 Ill. App. 3d 897, 903, 699 N.E.2d 1081 (1998).

The ordinance at issue provides that the local liquor control commissioner "may deny an application for a city liquor dealer's license if the issuance of such license would tend to create a law enforcement problem, result in or add to an undue concentration of licenses, or have a deleterious impact on the health, safety or welfare of the community in which the licensed premises is to be located." Chicago Municipal Code, §4-60-040(h) (2005).

Plaintiff argues that the burden of proof of deleterious impact rests on the City and that the City failed to carry its burden because it presented irrelevant opinion testimony. As the City points out, plaintiff does not claim that the LAC misconstrued the meaning of "deleterious impact" or any other phrase in the ordinance. Rather, plaintiff argues that the evidence did not support the finding of fact that granting MJ Ontario a late-hour license would have a deleterious impact on the community. Therefore, the issue does not present a question of statutory interpretation. We agree with the City that, instead, the issue raised by plaintiff is whether the finding of deleterious impact is against the manifest weight of the evidence.[4]

_____

[4] We note that the City correctly mentions that plaintiff does not raise an argument concerning the circuit court's application of the clearly erroneous standard, which is used to review mixed questions of law and fact. See City of Belvidere, 181 Ill. 2d at 205.

-8-

The evidence presented in the instant case is, if anything, more compelling than that in <u>Ace Produce, Inc. v. Illinois Liquor Control Comm'n</u>, 93 Ill. App. 3d 381, 417 N.E.2d 214 (1981), upon which plaintiff heavily relies. There, a produce store's application to sell packaged alcoholic beverages was denied based solely upon the applicant's inadequate parking area which created a hazardous traffic condition at a busy intersection. The Commission considered evidence including photographic exhibits depicting a nearby busy highway intersection and testimony as to the dimensions of the applicant store's parking lot and concluded that the traffic conditions would be exacerbated by the issuance of a license. On review, the denial was affirmed as the Commission's findings were based on competent evidence and not against the manifest weight of the evidence. <u>Ace Produce, Inc.</u>, 93 Ill. App. 3d at 383.

In the instant case, evidence was presented of already existing problems in the neighborhood that would be exacerbated, as in <u>Ace Produce, Inc.</u>, by the issuance of the license. The problems here were not confined solely to traffic-related concerns, however. Rather, there was evidence of existing problems with public drinking, noise, litter, and criminal activity, which would be exacerbated with the issuance of a late-hour license. Moreover, we agree with the City that plaintiff appears to misinterpret <u>Ace Produce, Inc.</u> as requiring "site-specific" information at the hearing. Plaintiff has thus characterized the evidence in that case, which included photographs of traffic patterns and police testimony about traffic accidents, in addition to testimony about the specific dimensions of the parking lot. We do not read <u>Ace Produce, Inc.</u> as requiring evidence in the manner that plaintiff suggests, such that it concern only the applicant property. Rather, the evidence in the instant case, which concerned the immediate area of MJ Ontario, was proper

because the ordinance concerns the potential impact of the late-hour license on the health, safety or welfare of the applicant's community.

Additionally, we reject plaintiff's assertion, expressed in terms of a failure to sustain a burden of proof, that the City essentially presented "no evidence" because it presented nothing more than speculative opinion testimony. For this claim, plaintiff relies entirely upon City of Evanston v. City of Chicago, 279 Ill. App. 3d 255, 664 N.E.2d 291 (1996). There, while the court did state that opinion testimony "that is based purely on guess, surmise or conjecture is inadmissible and is tantamount to no evidence at all," it did so in an entirely different context. City of Evanston, 279 Ill. App. 3d at 269. That case does not involve an administrative proceeding but, instead, proceedings in the circuit court for injunctive relief. On review, the court held that there had not been an abuse of discretion in the exclusion of lay opinion testimony. City of Evanston, 279 Ill. App. 3d at 270. Here, however, rules concerning the admission of evidence, which we address later in consideration of another of plaintiff's claims, are relaxed and, in any event, the opinion testimony objected to did not involve the opinion of third parties but of the witnesses themselves. Here, unlike in the City of Evanston, the testimony was based on the witnesses' personal observations, and therefore, it was not "speculative" in the way plaintiff asserts.

In conjunction with this point, plaintiff also maintains that an agency decision must be supported by expert testimony. For this, plaintiff relies entirely upon Obasi v. Department of Professional Regulation, 266 Ill. App. 3d 693, 639 N.E.2d 1318 (1994), which involved proceedings to contest the revocation of a physician's medical license. There, one finding of

1-04-2249

abandonment of a patient was reversed because the charge was not supported with sufficient

evidence; the only opinion expressed as to patient abandonment was elicited from the

Department's expert, who testified that, in two hypothetical questions posed, there was no patient

abandonment. Obasi, 266 Ill. App. 3d at 700-01. The instant case does not involve complex

medical situations evaluated by experts but, rather, determinations made based on reasonable

inferences from testimony that was, in turn, based upon personal knowledge and experience.[5]

Contrary to plaintiff's claims, the record contains ample support for the LAC's finding that

issuance of a late-hour license to plaintiff would have a deleterious impact on the health, safety, or

welfare of the community in which MJ Ontario is located, thus justifying the denial of the license.

The finding was based upon testimony from two area residents, Alderman Natarus and

Rosemeyer, both of whom lived within a short distance of the plaintiff's premises. The alderman

testified as to his impressions, which were based not only upon representation of the ward but

upon his personal observations of the pedestrian and vehicular traffic, and of parking problems, in

the immediate area of the premises. The area, according to Alderman Natarus, was becoming

---

[5] We note that Obasi appears to be the sole authority for plaintiff's alternate contention,

that the LAC's findings were arbitrary, unreasonable, and unsupported by sufficient evidence.

However, plaintiff does not address what difference, if any, would result from the application of

this standard as opposed to the manifest weight standard. In any event, we do not find the LAC's

findings to be contrary to the manifest weight of the evidence; to the contrary, as we explain, the

record shows ample evidence supports the decision and, thus, we would not find the decision to

be arbitrary or unreasonable.

residential. He personally had witnessed fights occurring, crowds of people, inebriated people walking into the streets, and people soliciting drugs and sex. He had also witnessed sex acts occurring in cars. Additionally, Alderman Natarus testified that, on occasion, the City had to bring in trucks for intoxication testing, and that the amount of litter necessitated street sweeping even in the early hours of the morning. Alderman Natarus also explained that there were fewer police officers available during the early morning hours and his concerns were for the public health, safety, and welfare.

Rosemeyer testified that her personal opinion and the opinion of the residents' association she represents were the same. She testified to personal observations similar to those of Alderman Natarus. Rosemeyer stated that there were late-night problems with noise, traffic congestion, blaring radios, and litter. According to her, people frequently continued to "party" in public areas, meaning that they would drink, engage in sexual activity, defecate, and litter the streets. Incidents of vandalism had also increased at night.

Additionally, as earlier noted, Lieutenant Cooper testified as to policing problems in the immediate vicinity of plaintiff's premises, the late-hour police staffing concerns related to the alcohol-related problems in that area and the strain on the police department's ability to police the area. Furthermore, Jurczyk himself admitted there were problems with crime, litter, noise, and drunken patrons in the area. Thus, given such testimony, the LAC's conclusion that granting a late-hour license to MJ Ontario would exacerbate those problems was reasonable.[6] Accordingly,

_____

[6] We note also plaintiff's assertion that the LAC's decision here should be reversed based upon the circuit court's reversal of the LAC's denial of a license in several other cases. Because

because there was sufficient evidence in the record to support the finding of deleterious impact, it was not against the manifest weight of the evidence.

Plaintiff next contends that the LAC improperly admitted certain evidence at the hearing. Specifically, plaintiff argues that, although hearsay evidence is inadmissible in an administrative hearing, most of Lieutenant Cooper's testimony was based upon a "hearsay document," the City's Exhibit No. 2 (the memorandum of calls for police service in the area), which the LAC also improperly admitted. Plaintiff further claims that neither the lieutenant nor Rosemeyer should have been allowed to testify on behalf of others; that is, that Lieutenant Cooper should not have been allowed to testify on behalf of Commander Griffin, nor should Rosemeyer, on behalf of the River North Residents Association.

However, plaintiff fails to acknowledge that "[o]ur supreme court has held that the strict rules of evidence that apply in a judicial proceeding do not apply in proceedings before an administrative agency." Ivy v. Illinois State Police, 263 Ill. App. 3d 12, 19, 636 N.E.2d 738 (1994); see also Huff v. Rock Island County Sheriff's Merit Comm'n, 294 Ill. App. 3d 477, 483, 689 N.E.2d 1159 (1998); McCleary v. Board of Fire & Police Commissioners, 251 Ill. App. 3d 988, 993, 622 N.E.2d 1257 (1993).[7] Moreover, an administrative agency's "decision regarding

---

plaintiff cites no legal authority for the proposition, in contravention of Supreme Court Rule 341(e)(7) (188 Ill 2d R. 341(e)(7)), we do not address the point at any length, but note only that a similar argument (for comparison of disciplinary cases) was rejected by our supreme court (Launius, 151 Ill. 2d at 440-42).

[7] As the City notes, although plaintiff bases his claim on section 10-40 of the

the admission of evidence is discretionary and should be reviewed as such." Wilson v. Department of Professional Regulation, 344 Ill. App. 3d 897, 909, 801 N.E.2d 36 (2003); Morelli v. Ward, 315 Ill. App. 3d 492, 497, 734 N.E.2d 87 (2000). Such decisions will not disturbed on review absent an abuse of discretion. Morelli, 315 Ill. App. 3d at 497.

We find no abuse of discretion in the admission of the testimony from any of the witnesses. Contrary to plaintiff's assertion that Alderman Natarus' testimony was speculative or lacking in foundation, as previously noted, the alderman testified as to the basis for his opinion, which was his personal experience as an area resident and his personal observations. Such lay opinion testimony was properly admitted. See, *e.g.*, Hopkinson v. Chicago Transit Authority, 211 Ill. App. 3d 825, 846-47, 570 N.E.2d 716 (1991) (lay witness may provide opinion testimony that is rationally based on the witness's perception and is helpful to clear understanding and determination of matter at issue); see also Northern Illinois Gas Co. v. Vincent DiVito Construction, 214 Ill. App. 3d 203, 215, 573 N.E.2d 243 (1991) (testimony on matters of which the witness has personal knowledge through his own senses is admissible). Further, contrary to plaintiff's claim that Lieutenant Cooper's testimony was based "almost exclusively" on the City's Exhibit No. 2, our review of the record shows otherwise. In fact, most his testimony was based on the lieutenant's own knowledge as well as his general experience and observations in the area. The exhibit concerned only the numbers and types of calls for police assistance, yet Lieutenant

Administrative Procedure Act (5 ILCS 100/10-40 (West 2002)), the Administrative Procedure Act is inapplicable to the LAC (El Sauz, Inc. v. Daley, 328 Ill. App. 3d 508, 517-18, 765 N.E.2d 1052 (2002)).

Cooper testified to numerous other points, such as lack of police personnel at certain hours, that were not subjects of the document. Further, a foundation was established for admission of the exhibit, and the data therein was recorded in the regular course of the police department's business; therefore, we believe the exhibit was properly admitted. See Champaign National Bank v. Babcock, 273 Ill. App. 3d 292, 298, 652 N.E.2d 848 (1995). However, because essentially all of the lieutenant's testimony would have been admissible and, thus, would not have been affected by exclusion of the exhibit, even if the admission of the document were deemed improper, such admission would not be reversible error. See McCleary, 251 Ill. App. 3d at 994; Pratico v. Board of Fire & Police Commissioners, 82 Ill. App. 2d 377, 385-86, 226 N.E.2d 505 (1967). Finally, because both Lieutenant Cooper and Rosemeyer testified as to their own opinions, which were based, again, on personal experience and observations, we find no abuse of discretion in the admission of their testimony on behalf of, respectively, Commander Griffin and the River North Residents Association.

Finally, plaintiff contends that LAC's decision was improper because it was inconsistent with a subsequent decision of the LAC reversing the denial of a late-hour license to a neighboring property. Specifically, plaintiff claims that a February 2005 decision, a copy of which was appended to plaintiff's appellate brief, concerning a license for the property at 226 West Ontario demonstrates that the decision concerning MJ Ontario was incorrect. We reject this contention for several reasons. First, because the order concerning 226 W. Ontario is not contained in the record, we may not consider it. See Zimmer v. Melendez, 222 Ill. App. 3d 390, 394-95, 583 N.E.2d 1158 (1991) (attachments to briefs that are not included in record are not properly before

1-04-2249

reviewing court); see also <u>Tiller v. Semonis</u>, 263 Ill. App. 3d 653, 656, 635 N.E.2d 572 (1994) (documents not otherwise before court, but attached to appellate brief, are not part of record on appeal). Second, because plaintiff did not raise such argument before the circuit court, it is deemed waived. See, *e.g.*, <u>Bonner v. City of Chicago</u>, 334 Ill. App. 3d 481, 487, 778 N.E.2d 285 (2002). Finally, even if the order were properly included in the record and argument concerning that case had not been waived, the different outcome there would not establish that the findings in the instant case were incorrect. The circumstances in that case are significantly different; there, the applicant already had a late-hour license but sought expansion to the basement of the premises, so different conclusions could reasonably be reached in the separate instances.

Therefore, for the reasons stated above, we affirm the order of the circuit court upholding the LAC's decision.

Affirmed.

McNULTY and O'MALLEY, JJ., concur.