# Illinois Official Reports

## Appellate Court

---

### *Doyle v. Executive Ethics Comm'n*, 2021 IL App (2d) 200157

---

| | |
|---|---|
| Appellate Court Caption | MARK DOYLE, Plaintiff-Appellee, v. THE EXECUTIVE ETHICS COMMISSION; CHAD FORNOFF, in His Capacity as Executive Director of the Executive Ethics Commission; and SUSAN HALING, in Her Capacity as Executive Inspector General for the Agencies of the Governor, State of Illinois, Defendants-Appellants. |
| District & No. | Second District<br>No. 2-20-0157 |
| Filed | June 25, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 19-MR-570; the Hon. Kevin T. Busch, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Bridget Dibattista, Assistant Attorney General, of counsel), for appellants.<br><br>Michael E. Bloom, of Benesch Friedlander Coplan & Aronoff LLP, of Chicago, for appellee. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Jorgensen and Brennan concurred in the judgment and opinion.


**OPINION**

¶ 1	Pursuant to the State Officials and Employees Ethics Act (Ethics Act) (5 ILCS 430/5-45(a) (West 2014)), the plaintiff, former state employee Mark Doyle, was barred for one year after he left his state employment from receiving compensation from any entity with whom he had significant business dealings in his capacity as a state employee in his last year of state employment. The defendant, the Executive Ethics Commission (Commission), sanctioned Doyle $154,056.10 after determining that he had violated the Ethics Act by receiving indirect payments from a prohibited entity. The circuit court of Kane County reversed the Commission's determination, finding that the Ethics Act restricted only direct payments from a prohibited entity, not indirect payments. For the reasons that follow, we reverse the circuit court's determination.

¶ 2	                                   I. BACKGROUND
¶ 3	The Ethics Act was enacted in 2003. It contains a "revolving door prohibition" under which a former state employee who, in the year before leaving state employment, is involved in awarding a large state contract to an entity is prohibited from knowingly accepting compensation or fees from that entity during the first year after leaving state employment. *Id.*

¶ 4	Doyle was a project manager for the Illinois Department of Human Services (DHS) from October 2011 to January 2015. Doyle was a "C-List" employee under the Ethics Act, meaning that his position was deemed to involve the authority to participate personally and substantially in awarding state contracts, as set forth under the revolving door prohibition. As a project manager, Doyle helped manage the closure of state-run psychiatric and disability care institutions and facilitated the transition to community-based facilities and small group homes.

¶ 5	One of the consultants hired by DHS for these transitions was Community Resource Associates, Inc (CRA), cofounded by Derrick Dufresne. CRA was awarded a state contract in 2012 that was amended each subsequent year. The last contract before Doyle's departure totaled $1,182,185 and ran from July 2014 through January 2015. Doyle was involved in awarding the state contract to CRA and supervised CRA on behalf of DHS from 2012 until 2015, when the contract terminated. After a change in administration at the Governor's office in January 2015, Doyle's employment with DHS was terminated.

¶ 6	On February 2, 2015, Doyle submitted a revolving door application to the Office of the Executive Inspector General (OEIG) to work for CRA Consulting, Inc (CRA-C), which, like CRA, was founded by Dufresne. Dufresne formed CRA-C in 2014 for the purpose of contracting with the Georgia Department of Behavioral Health and Development Disabilities for needed services following a federal lawsuit and settlement regarding Georgia's management of state-run institutions for disabled individuals (Georgia Project). CRA-C's job included contracting with individuals and organizations to fulfill Georgia's obligations to provide services to disabled individuals. Under the formal job offer from CRA-C, Doyle would

provide on-site consulting services to CRA-C in connection with the Georgia project for $1100 per day, with an off-site rate of $150 per hour.

¶ 7      On February 13, 2015, following an investigation, the OEIG denied Doyle's application. On March 2, 2015, following Doyle's appeal, the Commission affirmed the OEIG's decision. The Commission determined that, for the purpose of the revolving door prohibition, CRA-C was the same entity as CRA. Because Doyle had participated personally and substantially in DHS's decision to award contracts or contract change orders in excess of $25,000 to CRA, the Commission concluded that Doyle's acceptance of CRA-C's job offer would violate the revolving door prohibition. Doyle did not appeal that decision.

¶ 8      On February 26, 2015, CRA-C and BennBrook, Inc. (BennBrook), a consulting company that performed quality assurance for programs for disabled individuals, entered into an agreement for BennBrook to provide consulting services to CRA-C for the Georgia Project. BennBrook was founded by Dr. Charlene Bennett and Dr. David Brooks. Under the agreement, CRA-C contracted to pay BennBrook $1200 per day for on-site work in Georgia and $150 per hour for off-site work. Sometime after February 26, BennBrook hired Doyle to work under the agreement.

¶ 9      On April 3, 2015, Doyle submitted a revolving door application to the OEIG regarding his job with BennBrook. The application did not reference CRA-C, Georgia, or the Georgia Project. On April 16, 2015, the OEIG approved the revolving door application.

¶ 10      On April 24, 2015, Doyle and BennBrook executed a contract for Doyle to perform work on the Georgia Project. Under the agreement, Doyle would receive $1100 per day for on-site work and $150 per hour for off-site work.

¶ 11      After Doyle began working for BennBrook, he sent e-mails to BennBrook directing it to pay him after CRA paid BennBrook. On May 22, 2015, he wrote:

"Pay me each month after CRA pays IAG. [(IAG was a company also created by BennBrook's founders.)] No need for you to go through any additional administrative expense or for you to cash flow me. I really appreciate all you and IAG has done for me!!!!!!

* * *

I have attached the following 5 invoices for my Georgia Consulting. CRA must bill the State of Georgia by the 27th of each month. Therefore all of these invoices must be submitted to CRA as soon as possible so they can in turn bill Georgia."

In June 2015, Doyle sent an e-mail to BennBrook regarding outstanding invoices that he stated "should be paid when you receive the June 2015 payment from CRA Consulting, Inc." He sent similar e-mails to BennBrook from July 2015 through February 2016. Between June 1, 2015, and February 15, 2016, Doyle billed $154,056.10 for his consulting work on the Georgia Project.

¶ 12      On September 8, 2016, the OEIG[1] brought with the Commission a complaint against Doyle, alleging that he violated the revolving door prohibition in the Ethics Act by working for BennBrook. The complaint alleged that, after the OEIG denied Doyle's application to work for CRA-C, he conspired with Dufresne, Bennett, and Brooks to circumvent its determination

---

[1]The complaint was brought by then-acting Executive Inspector General for the Agencies of the Governor, Margaret Hickey, who was succeeded by defendant Susan Haling.

that he could not work for CRA-C, and they concocted a scheme under which CRA-C employed and compensated Doyle in all but name, and BennBrook was a mere "straw client" or "pass-through entit[y]."

¶ 13 Doyle filed an objection to the complaint, asserting that, because his fees did not come directly from CRA-C, he was not prohibited from receiving them. The Commission denied Doyle's objections, ruling that the revolving door prohibition barred both direct and indirect compensation. The Commission further concluded that the allegations in the complaint were sufficient to allow the case to proceed to discovery.

¶ 14 Both the OEIG and Doyle thereafter moved for summary judgment as to whether Doyle had violated the Ethics Act. In support of the OEIG's motion, the OEIG attached 27 exhibits, including copies of Doyle's revolving door application files; deposition transcripts of Doyle, Dufresne, Brooks, and Bennett; relevant contracts; copies of invoices; and e-mail communications. The OEIG abandoned any allegations that Doyle had conspired with CRA-C and BennBrook to evade the Ethics Act. In support of his motion for summary judgment, Doyle pointed to the same discovery, which he argued confirmed that he did not attempt to circumvent his revolving door obligations by working for BennBrook, as all the evidence showed that he received compensation from only BennBrook, which was not a restricted entity.

¶ 15 On September 11, 2018, the Commission entered summary judgment on the OEIG's behalf, finding that no genuine issue of material fact existed as to Doyle's violation of the Ethics Act. The Commission concluded that the evidence showed that, within a year of termination from his state employment, Doyle knowingly received compensation or fees for services from CRA-C through its subcontract with BennBrook. In support of its conclusion, the Commission pointed to one of Doyle's e-mails directing BennBrook to pay him from the payments it received from CRA-C. The Commission also noted the arrangement whereby, under the CRA-C/BennBrook contract, CRA-C would pay BennBrook $1200 per day for on-site consulting services and $150 per hour for off-site work and, in turn, under the BennBrook/Doyle contract, Doyle received $1100 per day for on-site consulting services and $150 per hour for off-site work.

¶ 16 In denying Doyle's motion for summary judgment, the Commission rejected Doyle's argument that the Ethics Act applies only when payments are made from a prohibited source directly to a former state employee. The Commission found that Doyle's interpretation of the Ethics Act was too narrow and would lead to absurd results.

¶ 17 Following the Commission's order on liability, the parties submitted briefs regarding the appropriate fine, if any. Based on the mitigating and aggravating factors set forth in section 1620.530(b) of Title 2 of the Illinois Administrative Code (2 Ill. Adm. Code 1620.530(b) (2018)), Doyle argued that a warning—or a minimal fine—was appropriate. Specifically, he argued that he (1) did not abuse his authority or attempt to take advantage of his state employment at any point in time; (2) did not use any state resources, money, or time, in the commission of his "offense"; (3) had no prior disciplinary record; (4) did not attempt to circumvent the revolving door prohibition; (5) opposed the OEIG's allegations in good faith; (6) believed that he had complied with his revolving door obligations; (7) completed work for BennBrook that benefitted hundreds of individuals with disabilities in Georgia; and (8) had already been sufficiently punished and deterred because the OEIG's action had caused him to be unemployed for nearly nine months and he had already incurred over $23,000 in legal fees.

¶ 18    In its final order, the Commission imposed a fine of $154,056.10 against Doyle. The Commission noted that this was the amount Doyle had billed BennBrook for his consulting work on the Georgia Project. The Commission explained that Doyle was not entitled to that compensation because, as BennBrook was a mere "conduit" or "pass through" entity for CRA-C's payments to Doyle, it constituted a violation of the Ethics Act.

¶ 19    The Commission noted all of the relevant aggravating and mitigating factors under the Illinois Administrative Code, but it found that most were inapplicable because they were neither aggravating nor mitigating. The two factors it identified as aggravating were the "nature of violation[ ]" and the "extent of [Doyle's] intent or knowledge of the facts surrounding the violation." See *id.* § 1620.530(b)(1), (b)(5). Regarding the nature of the violation, the Commission noted that Doyle had wrongfully obtained $154,056.10. As to Doyle's knowledge, the Commission highlighted that, although Doyle knew that he was restricted from accepting compensation from CRA-C, he actively directed BennBrook to obtain reimbursement for his work from CRA-C. In mitigation, the Commission noted that Doyle had no "prior disciplinary record or Ethics Act violation."

¶ 20    On May 14, 2019, Doyle filed in the circuit court of Kane County a complaint for administrative review of the Commission's final order. On January 28, 2020, following a hearing, the circuit court vacated the Commission's findings and the fine that it had imposed. The circuit court found that Doyle had not received money from a prohibited source because all of his income came from IAG and BennBrook. The circuit court explained that, if the legislature had intended to prohibit the type of employment that Doyle had engaged in, "they could have easily and clearly set it forth in the statute."

¶ 21    On February 24, 2020, the Commission filed a timely notice of appeal.

¶ 22                                    II. ANALYSIS

¶ 23    The first issue we address on appeal is whether the Commission reasonably interpreted section 5-45(a) of the Ethics Act (5 ILCS 430/5-45(a) (West 2014)) as precluding certain former state employees from receiving even indirect compensation from prohibited entities. Generally, courts review *de novo* the interpretation of a statute. *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2014 IL App (1st) 132011, ¶ 19. The goal of statutory interpretation is to ascertain and give effect to the legislature's intent. *Id.* The best indicator of the legislature's intent is the language of the statute, which should be given its plain and ordinary meaning. *Id.* It is not permissible to depart from the plain language of the statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Id.* ¶ 35. Each word should be given a reasonable meaning and not rendered superfluous. *People ex rel. Department of Labor v. Sackville Construction, Inc.*, 402 Ill. App. 3d 195, 198 (2010). The statute is to be read as a whole with all relevant parts to be considered. *Gardner v. Mullins*, 234 Ill. 2d 503, 511 (2009).

¶ 24    When the language is clear and unambiguous, the statute must be interpreted *de novo* without resort to other aids of construction and without deference to the agency's decision. See *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239 (1996) (declining to defer to the agency's interpretation where the statute was not ambiguous). However, if the statute is ambiguous, the court does not perform its own *de novo* interpretation of the statute, as would be necessary in the absence of an administrative interpretation. *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d 652, 657 (2005). Rather, the court merely asks

whether the agency charged with the statute's administration came to a reasonable interpretation based on a permissible construction of the statute. *Coalition to Request Equitable Allocation of Costs Together (REACT) v. Illinois Commerce Comm'n*, 2015 IL App (2d) 140202, ¶ 44. While the court is not " 'bound' " by the agency's interpretation, the court is not justified in reversing the decision merely because it would have interpreted the statute differently. *Id.*

¶ 25 The first task, therefore, is to determine whether the statute at issue is ambiguous. A statute is not ambiguous simply because the parties disagree as to its meaning. *Kaider v. Hamos*, 2012 IL App (1st) 111109, ¶ 11. A statute is ambiguous if its meaning cannot be interpreted from its plain language or if it is capable of being understood "by reasonably well-informed persons" in more than one manner. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 396 (2003). Here, for the reasons that follow, the interpretation offered by Doyle is not the only reasonable interpretation. Therefore, the Commission's interpretation of the statute is entitled to deference so long as it is reasonable.

¶ 26 The contested portion of section 5-45(a) provides:

"(a) No former officer, member, or State employee, or spouse or immediate family member living with such person, shall, within a period of one year immediately after termination of State employment, knowingly accept employment or receive compensation or fees for services *from a person or entity* if the officer, member, or State employee, during the year immediately preceding termination of State employment, participated personally and substantially in the award of State contracts, or the issuance of State contract change orders, with a cumulative value of $25,000 or more to the person or entity, or its parent or subsidiary." (Emphasis added.) 5 ILCS 430/5-45(a) (West 2014).

¶ 27 Doyle reads the emphasized language above as prohibiting him from receiving only direct compensation from a person or entity who was awarded a State contract or issued a contract change through Doyle's substantial involvement while a state employee. However, the plain language of the statute does not indicate that it refers to only direct compensation. Rather, the legislature's use of the word "from," without including any limitations on that term, suggests that the legislature intended the restrictions on receiving compensation or fees from a prohibited entity to be read more broadly. "From" is defined as a function word used to indicate a starting point or source (Merriam-Webster Online, https://www.merriam-webster.com/dictionary/from (last visited June 11, 2021) [https://perma.cc/28BY-7DXP]). There obviously can be many steps between a starting point and the end result. *Cf. People v. Woods*, 214 Ill. 2d 455, 467 (2005) (discussing a chain of custody and how evidence that was recovered from a defendant and analyzed by a forensic chemist may still be admissible if protective measures were taken to ensure that the substance recovered from the defendant was the same substance later tested by the forensic chemist). As such, the statute is ambiguous, which requires us to defer to the Commission's reasonable interpretation of the statute. See *REACT*, 2015 IL App (2d) 140202, ¶ 44. The Commission's determination that the Ethics Act prohibits both direct and indirect compensation is not an unreasonable interpretation.

¶ 28 Doyle insists that interpreting the statute as prohibiting indirect compensation would lead to absurd results. He argues that former state employees "would violate the Revolving Door Prohibition whenever they work for a provider of a Restricted Entity in the ordinary course of business and become aware that a Restricted Entity is a client of their employer." In making

this argument, however, Doyle overlooks a key part of section 5-45(a). A former state employee violates section 5-45(a) only if he "knowingly" accepts compensation from a prohibited entity. 5 ILCS 430/5-45(a) (West 2014). Here, the e-mails Doyle sent to BennBrook make clear that he knew that CRA-C, a prohibited entity, was the source of his compensation. This is not a situation where Doyle accidently violated the Ethics Act.

¶ 29     We also believe that the Commission's interpretation of the Ethics Act is consistent with the underlying rationale of the act. As Doyle acknowledges, the purpose of revolving door statutes is to "ensure that public officials adhere to the highest standards of conduct, avoid the appearance of impropriety, and do not use their positions for private gain or advantage." *In re Advisory From the Governor*, 633 A.2d 664, 671 (R.I. 1993). The Commission's determination that a former state employee cannot do indirectly something that he cannot do directly is not unreasonable. See *In re Petition of the Village of Kildeer to Annex Certain Territory*, 124 Ill. 2d 533, 547 (1988) (it is "axiomatic that a party cannot circumvent the purpose of [a] statute by doing indirectly what he cannot do directly").

¶ 30     We do not, by the previous three paragraphs, attempt to interpret the statute. Again, where the words are suggestive of more than one meaning, the main question is simply whether the Commission's interpretation was reasonable and should be afforded deference. See *REACT*, 2015 IL App (2d) 140202, ¶ 50. Here, as the statutory language is ambiguous, we believe that the Commission's interpretation of the Ethics Act was indeed reasonable.

¶ 31     We next turn to whether the Commission erred in sanctioning Doyle $154,056.10 for violating the Ethics Act. Even if the administrative decision is determined to be correct under the foregoing standards of review, the sanction imposed by the agency may still be reversed if it amounts to an abuse of discretion. *Sonntag v. Stewart*, 2015 IL App (2d) 140445, ¶ 19. A sanction will be found to be an abuse of discretion if it is either (1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute. *Id.* A "reviewing court defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 99 (1992). This is true "even if the reviewing court considers another sanction to be more appropriate." *County of Cook v. Illinois Local Labor Relations Board*, 302 Ill. App. 3d 682, 692 (1998). Because the issue in this case is the propriety of the Commission's sanction, our review is for an abuse of discretion.

¶ 32     In the present case, we cannot say that the Commission abused its discretion in sanctioning Doyle $154,056.10. The Ethics Act allows the Commission to "levy an administrative fine for a violation of [the revolving door prohibition of the Ethics Act] of up to 3 times the total annual compensation that would have been obtained." 5 ILCS 430/50-5(a-1) (West 2014). Thus, based on the facts of this case, the Commission was authorized to fine Doyle over $462,000. The fine it did impose, therefore, was significantly less than the maximum fine that it could have imposed. Further, the fine that the Commission imposed directly correlated to the amount that Doyle had received from CRA-C via BennBrook. The fine did not reflect an arbitrary amount. *Cf. Securities & Exchange Comm'n v. Randy*, 38 F. Supp. 2d 657, 673 (N.D. Ill. 1999) (the disgorgement of illicit profits is a proper equitable remedy for fraud).

¶ 33     Doyle insists that the sanction is unduly harsh in consideration of the applicable mitigating factors. However, as the record reveals that the Commission considered all of the mitigating factors, the harshness of the sanction alone is not a basis to disturb the Commission's order. See *Bultas v. Board of Fire & Police Commissioners of the City of Berwyn*, 171 Ill. App. 3d

189, 196 (1988) (finding that a police officer's single act of kicking and injuring a detainee was sufficient cause for discharge despite the officer's otherwise "unblemished career").

> "We are aware of no authority which properly permits courts reviewing administrative decisions to reweigh evidence, including mitigating factors, for the purpose of determining that the sanction of discharge is exceedingly harsh and, on that basis, substituting some lesser penalty in its place. Consideration of the relative severity of discharge goes beyond the scope of our review. To participate in such considerations reduces the review of administrative decisions to an exercise in second-guessing and ignores the deference to be accorded to administrative bodies." *Id.* at 197.

¶ 34    Finally, we reject Doyle's argument that the Commission's sanction demonstrates that his due process rights were violated. Doyle points out that the Commission originally charged him with conspiring with CRA-C and BennBrook to evade the revolving door prohibition. The Commission, however, eventually abandoned those charges. Nonetheless, he contends that the Commission still considered those unproven charges when it sanctioned him, finding that BennBrook was a mere "conduit" or "pass-through" entity for CRA-C's payments to him. We disagree with Doyle's characterization of the Commission's finding. We believe that the Commission's language simply demonstrates that it found that Doyle had improperly received indirect compensation from CRA-C. As set forth earlier, the Commission's determination that the revolving door prohibition prevented Doyle from receiving indirect compensation from a prohibited entity was a reasonable interpretation of the Ethics Act.

¶ 35                                III. CONCLUSION
¶ 36    For the foregoing reasons, we reverse the judgment of the circuit court of Kane County and reinstate the Commission's sanction of $154,056.10.

¶ 37    Reversed.