2026 IL App (1st) 241732-U

Nos. 1-24-1732 & 1-24-1733 (cons.)

Order filed March 31, 2026

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| DERRY BERRIGAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 2021M1450065 |
| | ) | |
| CITY OF CHICAGO DEPARTMENT OF ANIMAL | ) | |
| CARE AND CONTROL, | ) | The Honorable |
| | ) | Leonard Murray |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE WILSON delivered the judgment of the court.
Presiding Justice Mitchell and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The judgment of the circuit court is reversed and the judgment of the administrative law judge (ALJ) is affirmed. The ALJ's restitution award was not an abuse of discretion, and the ALJ's dangerous animal determination was not against the manifest weight of the evidence. The circuit court improperly substituted its judgment for that of the agency.

¶ 2   This is an administrative review action in which defendant-appellant, the City of Chicago Department of Animal Care and Control (CACC), cited plaintiff-appellee Derry Berrigan for failing to restrain and control her animal in violation of the Municipal Code of Chicago (Code)

and separately declared her dog a "dangerous animal" under the Code. Following a consolidated evidentiary hearing, the ALJ found Berrigan liable for failing to restrain her dog, imposed a fine, ordered restitution, and upheld the dangerous animal determination. On administrative review, the circuit court of Cook County affirmed the fine but vacated the restitution award and reversed the dangerous animal determination. CACC appeals both rulings.

¶ 3                                    I. BACKGROUND

¶ 4      On the evening of December 12, 2020, a dog fight occurred between Berrigan's dog (Ella) and a dog belonging to Carter Yeatman (Josie)[1] in Solti Garden, a dog-friendly portion of Grant Park in downtown Chicago. On January 14, 2021, the CACC issued Berrigan a citation for failing to restrain and control her animal in violation of section 7-12-030 of the Code (amended Mar. 14, 2007), and a citation for failing to maintain a current city dog license in violation of section 7-12-140 of the Code (amended Feb. 7, 2007).[2] On February 1, 2021, the Acting Executive Director of CACC issued a determination letter declaring Ella a "dangerous animal" pursuant to sections 7-12-020 of the Code (amended May 25, 2018) and 7-12-050 of the Code (amended Jan. 27, 2021).

¶ 5      On April 20, 2021, the City of Chicago Department of Administrative Hearings (DOAH) held a consolidated[3] evidentiary hearing regarding the dangerous-animal determination and the restraint citation before ALJ Frank Lombardo. Berrigan appeared *pro se*. At the hearing, the only percipient witnesses—Yeatman and Berrigan—testified about the events of December 12, 2020;

---

[1] Josie is also spelled Josey in the record.
[2] The common law record establishes that the licensing citation under section 7-12-140 was not addressed at the administrative hearing before the ALJ and was not raised on administrative review in the circuit court. Accordingly, the licensing citation is not at issue in this appeal.
[3] This consolidation represented the merging of two administrative dockets: No. 21AC00013A for the dangerous-animal determination (§§ 7-12-020, 7-12-050) and No. 21AC000064 for the animal-restraint citation (§ 7-12-030).

no additional eyewitnesses were identified. CACC Inspector Mary Ann Howard, the lead investigator on the case, testified regarding the ensuing investigation and her findings.

¶ 6    Yeatman testified that on the evening of December 12, 2020, he entered Solti Garden with Josie leashed and proceeded along the middle footpath into the park's raised interior. He observed Berrigan standing off to the right of the footpath, accompanied by her two dogs, Ella at her side and Duke riding in a stroller, and estimated that she was approximately 28 feet away from him. As he continued along the path, Ella suddenly charged with her leash dragging, knocked Josie onto her back, and ripped open the skin of Josie's throat. Yeatman testified that he attempted to restrain Ella by the leash but was unable to do so until Berrigan arrived and regained control.

¶ 7    Yeatman testified that he and his wife thereafter transported Josie to the Veterinary Emergency Group (VEG) that night, where Josie underwent surgery and was hospitalized overnight at a cost of $1,967.15. Follow-up care at Metropolitan Veterinary Center generated additional charges of $660.04, for a combined total of $2,627.19 for the incident. Yeatman further testified that on the night of the incident, a VEG staff member relayed an offer from Berrigan to pay one-half of the emergency bill. Yeatman responded that Berrigan should pay the full amount, but VEG ultimately charged Berrigan's credit card $982.01, representing about half of the emergency bill. Additionally, he testified that on December 30, 2020, he sent Berrigan a letter demanding the remaining $660.04 in follow-up veterinary expenses and describing the incident as an unprovoked attack for which she was entirely responsible. Berrigan refused both the additional payment and full liability.

¶ 8    Yeatman also testified regarding his prior encounters with Berrigan. He stated that before December 2020 he had seen Berrigan and her dogs several times at a distance but had never spoken with her. He recounted one encounter approximately two weeks before the incident, at roughly the

same location in the park, during which Berrigan told him to "go away, get away" as he walked his dog along the park path; Yeatman stated that he did not respond because he did not know her or her dogs.

¶ 9 Berrigan testified on her own behalf, framing the altercation as the product of Yeatman's negligent conduct. She acknowledged the prior exchange in which she had told Yeatman to keep away, emphasized that she had never given him permission to approach her or her dogs, and recalled a total of four instances in which she had done so. In addition, Berrigan's written submissions characterize Yeatman's prior conduct toward her and her dogs as "aggressive" and "harassing."

¶ 10 Berrigan testified that when she entered Solti Garden on the evening of December 12, 2020, the park was empty, both dogs were leashed, and she was bent over picking up after her dogs when she felt a slight tug on Ella's leash. Upon turning, she saw Ella and Josie fighting within a few feet of her. She testified that Yeatman was standing in the middle of the path approximately seven steps away, blocking her access to the dogs, and that she had to move him aside before she could reach their collars and separate them. Berrigan acknowledged that Josie's injuries were serious but testified that she and Ella also sustained injuries in the altercation, which she characterized as minor and were treated at home. Berrigan continued to emphasize the point that Yeatman had approached from behind without her knowledge and in deliberate disregard of her prior instructions not to approach her and her dogs.

¶ 11 Berrigan testified that on January 4, 2021, she replied to Yeatman's December 30, 2020, demand letter, asserting that on the night of the incident the parties had reached an oral agreement under which each would bear fifty percent of both liability and veterinary costs, and on that basis declined to make any further payment.

¶ 12    During Berrigan's testimony, the ALJ admitted several exhibits offered by Berrigan bearing on Ella's temperament, including, *inter alia*: letters from third parties attesting to Ella's good character and lack of prior incidents, a certified dog trainer's behavioral assessment, an article on greyhound temperament, and a statement from Dr. Robert Pearlman, who had observed Berrigan walking her dogs on leash shortly before the incident.

¶ 13    CACC Inspector Mary Ann Howard testified that she was assigned to investigate the incident and compile the investigative file—referred to in the record as "index of file"—which she forwarded to the Acting Executive Director Mamadou Diakhate along with her recommendation. The index of file contained written submissions from both Yeatman and Berrigan, veterinary records and invoices, photographs of Josie's injuries, and Howard's investigative report. Howard conducted an in-home interview with Yeatman on January 24, 2021, but acknowledged that she did not conduct a comparable interview with Berrigan before closing the investigation on January 26, 2021. She further testified that she interviewed only those witnesses identified to her by the close of the investigation. Based on her investigation, Howard recommended that Ella be deemed unrestrained and declared a dangerous animal.

¶ 14    At the conclusion of the April 20, 2021, hearing, the ALJ entered two separate final administrative decisions. On the restraint citation (Docket No. 21AC000064), the ALJ found that Berrigan violated Code section 7-12-030 (amended Mar. 14, 2007), imposed a $500 fine, and ordered Berrigan to pay $1,645.18 in restitution—representing the total veterinary expenses of $2,627.19 less the $982.01 Berrigan had already paid. On the dangerous-animal matter (Docket No. 21AC00013A), the ALJ found that Ella had caused a severe injury to another domestic animal, rendering her a dangerous animal by definition consistent with Code sections 7-12-020 (amended May 25, 2018), and 7-12-050 (amended Jan. 27, 2021) and affirmed CACC's determination and

its attendant conditions consistent with Code section 7-12-050 (amended Jan. 27, 2021). The Executive Director did not order euthanasia.

¶ 15    On May 24, 2021, Berrigan filed two complaints for administrative review in the circuit court of Cook County. On September 7, 2021, Berrigan filed her Specification of Errors. On October 25, 2021, Judge Patrice Ball-Reed affirmed the restraint violation and the $500 fine but vacated the restitution award, finding that Berrigan's prior payment of approximately half the emergency veterinary bill had effectively satisfied it. On November 15, 2021, CACC moved to reconsider the vacatur of the restitution award. The matters were thereafter reassigned to Judge Leonard Murray, who, on August 1, 2024, denied CACC's motion to reconsider and reversed the ALJ's dangerous-animal determination, finding that the investigation was not thorough and the facts insufficient to support liability against Berrigan. Of particular relevance, Judge Murray stated:

> "THE COURT: I believe the investigation was not thorough.***
>
> So it's hard for me to be comfortable with the conclusion that the City reached in terms of its filing of the claim here***[.]
>
> * * *
>
> THE COURT: I found Mr. [Yeatman]'s portrayal of what occurred leaving a lot of gaps.
>
> ***
>
> What was interesting to me about the record is how [Berrigan] sustained injuries***but the City was not concerned about that. And so I don't understand why that didn't lead to the same leveling of a fine, at least a violation against Mr. [Yeatman]'s [animal] as they want[ed] to impose on [Berrigan's] animal.
>
> * * *

THE COURT: The other thing that troubles me here is that the way the City ordinance is structured, the animal does not have a right to self-defense, which does not make any sense to me."

¶ 16    On August 30, 2024, CACC timely filed its notice of appeal for both rulings.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, CACC contends: (1) the circuit court erred in vacating the $1,645.18 restitution award because Berrigan's $982.01 payment covered only part of the veterinary expenses and any asserted oral agreement did not excuse the remaining balance; and (2) the court erred in reversing the ALJ's dangerous-animal determination, as the manifest weight of the evidence showed that Ella caused severe injuries to another domestic animal and that CACC's investigation otherwise satisfied Code section 7-12-050 (amended Jan. 27, 2021).

¶ 19    In a case arising under the Administrative Review Law, we review the decision of the administrative agency, not the determination of the circuit court. *Exelon Corp. v. Department of Revenue*, 234 Ill. 2d 266, 272 (2009).

¶ 20    The Administrative Review Law provides that judicial review extends to all questions of law and fact presented by the entire record. 735 ILCS 5/3–110 (West 1994). The proper standard of review depends on whether the question presented is one of fact, one of law, or a mixed question of fact and law. *Exelon Corp.*, 234 Ill. 2d at 272; *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 210 (2008). The Administrative Review Law limits judicial review to the administrative record; the court may not hear new or additional evidence. The statute additionally mandates that the "findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 1994). Accordingly, when a court reviews an administrative agency's factual findings, it will not reweigh

the evidence or substitute its judgment for that of the agency. Rather, the court will only ascertain whether such findings of fact are against the manifest weight of the evidence. *Exelon Corp.*, 234 Ill. 2d at 272; *American Federation of State, County & Municipal Employees, Council 31 v. Illinois State Labor Relations Board, State Panel*, 216 Ill. 2d 569, 577 (2005). An administrative agency's factual determinations are against the manifest weight of the evidence if the opposite conclusion is clearly evident. *Cinkus*, 228 Ill. 2d at 210. In contrast, an agency's conclusion on a question of law is reviewed *de novo. Exelon Corp.*, 234 Ill. 2d at 273; *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 205 (1998).

¶ 21    A mixed question of fact and law asks the legal effect of a given set of facts. *Exelon Corp.*, 234 Ill. 2d at 273; *Cinkus*, 228 Ill.2d at 211. Mixed questions of fact and law are " 'questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated.' " *American Federation of State, County & Municipal Employees*, 216 Ill.2d at 577 (quoting *Pullman–Standard v. Swint*, 456 U.S. 273, 289 n. 19 (1982)). An agency's conclusion on a mixed question of fact and law is reviewed for clear error. An administrative decision is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *Exelon Corp.*, 234 Ill. 2d at 273; *American Federation of State, County & Municipal Employees*, 216 Ill. 2d at 577-78.

¶ 22    A.    Restitution Award Was Authorized by Section 7-12-030 and was not an Abuse of Discretion

¶ 23    CACC contends that the circuit court erred in vacating the ALJ's restitution award of $1,645.18. We agree.

¶ 24    Section 7-12-030 provides that when a violation results in damage to another person's property, the violator is subject to a fine of not less than $300 and not more than $1,000, and "[i]n

addition to a fine, the owner may be required to submit full restitution to the victim." Code § 7-12-030 (amended Mar. 14, 2007). The ALJ found Berrigan liable under that section, imposed a $500 fine, and ordered $1,645.18 in restitution. On administrative review, the circuit court affirmed the liability finding and the fine but vacated the restitution award. Thus, liability and the fine are not at issue.

¶ 25    A circuit court may alter an administrative sanction only in narrow circumstances. Even where an administrative decision is otherwise deemed correct, the sanction imposed may still be reversed if it constitutes an abuse of discretion. *Doyle v. Exec. Ethics Comm'n*, 2021 IL App (2d) 200157, ¶ 31. A sanction will be found to be an abuse of discretion if it is either (1) overly harsh in view of the mitigating circumstances or (2) unrelated to the purpose of the statute. *Id*. A "reviewing court defers to the administrative agency's expertise and experience in determining what sanction is appropriate to protect the public interest." *Id*. (quoting *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 99 (1992)). This is true "even if the reviewing court considers another sanction to be more appropriate." *Id*. (quoting *County of Cook v. Illinois Local Labor Relations Board*, 302 Ill. App. 3d 682, 692 (1998)). Thus, the question is not whether the reviewing court would have imposed a lesser sanction, but whether the agency abused its discretion. If the reviewing court finds that the sanction is unreasonable, it cannot modify the sanction; rather, the court must remand to the agency for further proceedings consistent with the court's expressed opinion. *Momney v. Edgar*, 207 Ill. App. 3d 26, 29 (1990) (reviewing the Administrative Review Act and holding that the determination of an appropriate sanction is committed to the administrative agency, not the courts); *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 704 (1994).

¶ 26    Here, nothing in the record suggests the $1,645.18 restitution award was arbitrary,

unreasonable, or unrelated to the purposes of the ordinance. The record is undisputed that Yeatman incurred $1,967.15 in emergency veterinary charges and $660.04 in follow-up care, totaling $2,627.19, as a direct result of the incident. The ALJ credited Berrigan's prior payment of $982.01 and reduced the award accordingly, resulting in a restitution figure of $1,645.18—the precise unpaid balance of Yeatman's veterinary expenses. That award was fully authorized by the ordinance, directly tied to the harm caused by Berrigan's violation, and bore no hallmarks of arbitrariness.

¶ 27 Berrigan's contention that a prior private agreement between herself and Yeatman superseded the ALJ's restitution award is unpersuasive. Although the City, as enforcer of the ordinance, was entitled to seek restitution under Code section 7-12-030 (amended Mar. 14, 2007), a court may recognize satisfaction of the victim-compensation component of such an award through the common-law doctrine of accord and satisfaction. See *Emrick v. First Nat. Bank of Jonesboro*, 324 Ill. App. 3d 1109, 1116 (2001) ("[a]n accord and satisfaction is basically an agreement between the parties that settles a *bona fide* dispute over an unliquidated claim."). Of note, this principle does not extend to the $500 fine imposed under the same provision. Restitution inures to the victim's benefit and is intended to make the injured party whole; the fine, by contrast, is payable to the City and serves a punitive and deterrent function. It is therefore not a private obligation the parties may compromise among themselves.

¶ 28 The ALJ, however, made no finding that such an agreement existed. The record establishes Berrigan unilaterally paid half of the emergency veterinary expenses, and that the parties spoke by telephone regarding the muzzling of Ella and the potential discontinuation of any future monetary claims. Berrigan maintains the call produced a binding agreement; Yeatman testified otherwise. That conflict presented a classic question of credibility and weight of the evidence—matters

committed exclusively to the ALJ. See *Gernaga v. City of Chicago*, 2015 IL App (1st) 130272, ¶ 13 (on administrative review, neither the Appellate Court nor the circuit court can reweigh the evidence or the determination of the credibility of the witnesses, which is to be made by the agency). Having presided over the hearing and weighed the competing accounts, the ALJ determined no agreement existed and ordered restitution of the unpaid balance. Nothing in the record shows that the award was excessively harsh or unrelated to the ordinance's compensatory purpose so as to constitute an abuse of discretion.

¶ 29    Moreover, the circuit court erred by substituting its own factual findings for those of the agency. A reviewing court must treat the agency's factual findings as *prima facie* correct and may not reweigh the evidence or make its own factual determinations. *See* 735 ILCS 5/3-110 (West 1994); *Hayes v. State Tchr. Certification Bd.*, 359 Ill. App. 3d 1153, 1160 (2005). Here, the circuit court affirmed the ALJ's finding that Berrigan violated Code section 7-12-030 (amended Mar. 14, 2007) yet vacated the attendant restitution award on the unsupported premise that Berrigan's partial payment satisfied Yeatman's loss—a factual determination the ALJ never made. In doing so, the court supplanted the agency's fact-finding with its own, contrary to the Administrative Review Law. Further, nothing in the record of proceedings before the circuit court show any documentation or other proof that the parties had a meeting of the minds and entered into a binding settlement agreement regarding restitution prior to the ALJ's decision, or an accord and satisfaction thereafter.

¶ 30    Accordingly, the ALJ's restitution order was authorized by Code section 7-12-030 (amended Mar. 14, 2007) and supported by the record. The sanction was neither arbitrary nor unreasonable, and the circuit court therefore erred in vacating it. Even if the award were somehow deemed unreasonable, outright vacatur was not the appropriate remedy; the court was required to

remand to the agency for further proceedings. See *Momney*, 207 Ill. App. 3d at 29.

¶ 31    B.    The ALJ's Dangerous Dog determination was authorized by Sections 7-12-020 & 7-12-050 and was not against the Manifest Weight of the Evidence

¶ 32    CACC argues that the ALJ's dangerous animal determination was not against the manifest weight of the evidence and that the circuit court improperly substituted its judgment for that of the agency. We agree.

¶ 33    Berrigan, on the other hand, contends that the circuit court's reversal was proper because the ALJ's decision was against the manifest weight of the evidence; particularly, that the ALJ failed to address provocation and that CACC's investigation was inadequate for failing to apply the totality of the circumstances standard under Code section 7-12-050 (amended Jan. 27, 2021).

¶ 34    The question of whether provocation applies to situations in which one animal provokes another requires an interpretation of the Code, which is a question of law that we review *de novo*. See *Cinkus*, 228 Ill. 2d at 211. The rules of statutory construction apply to municipal ordinances. *Pooh-Bah Enters., Inc. v. County. of Cook*, 232 Ill. 2d 463, 492 (2009). When the language of an ordinance is clear and unambiguous, reviewing courts should not depart from the plain language and meaning of the municipal ordinance by reading into it exceptions, limitations or conditions that the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990).

¶ 35    Section 7-12-020 of the Code defines a dangerous animal as "[an] animal which bites, inflicts injury on, kills or otherwise attacks a human being or domestic animal *without provocation* on any public or private property." (Emphasis added) Code § 7-12-020 (amended May 25, 2018). The Code defines "provocation" to mean that:

> "the threat, injury or damage caused by the animal was sustained by a person who, at the time, was committing a willful trespass or other tort upon the premises occupied by the owner of the animal, or was tormenting, abusing, or assaulting the

animal, or was committing or attempting to commit a crime." Chicago Municipal Code § 7-12-020 (amended May 25, 2018).

¶ 36    In this case, the plain language of section 7-12-020 clearly limits provocation to situations where "a person" provokes a dog. See *Wortham v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 131735, ¶ 18; see also *Zollar v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 143426, ¶ 5. The court in *Wortham* already addressed this precise question and explained that had the city council intended the defense to be available when one animal provokes another, it could have done so by adding the phrase "by a person or animal" to the definition of provocation. *Id*. The council did not do so. Berrigan cites no legislative history or other authority indicating that provocation was meant to encompass inter-animal interactions. The ALJ was not permitted to expand the ordinance's plain language to include such circumstances, nor is this court at liberty to do so. See *Kraft*, 138 Ill.2d at 189. Accordingly, as a matter of law, Berrigan's argument that Ella acted in response to provocation by Yeatman's dog is of no moment; it is immaterial to the dangerous-animal determination.

¶ 37    It follows that the ALJ's finding that Ella fell within the definition of a dangerous animal under Code section 7-12-020 (amended May 25, 2018) was not against the manifest weight of the evidence. The record established that Berrigan failed to maintain physical control of Ella in violation of Code section 7-12-030 (amended Mar. 14, 2007), that Ella bit and severely injured Josie on a public way, and that no legally cognizable provocation existed under the ordinance. The ALJ considered, *inter alia*, the testimony of both parties, CACC's exhibits including the complete index of file, and Berrigan's additional exhibits bearing on Ella's temperament before concluding that the elements of a dangerous animal determination had been satisfied. A determination is against the manifest weight only where the opposite conclusion is clearly evident—that standard

is not met here. *Cinkus*, 228 Ill.2d at 210. To the extent the circuit court was concerned—as it stated from the bench—that the City's ordinance is structured such that "the animal does not have a right to self-defense," that concern provides no basis for reversal. The ordinance is unambiguous, no party argued otherwise, and it is not the function of the judiciary to engraft exceptions onto legislation that the enacting body did not express. See *Kraft*, 138 Ill. 2d at 189. Any reversal on this basis was error. Accordingly, this court finds the ALJ's dangerous animal determination was not against the manifest weight of the evidence.

¶ 38    Berrigan's argument that the ALJ failed to consider the totality of the circumstances must also fail. First and foremost, any argument that CACC failed to take into consideration the totality of the circumstances is forfeited. Berrigan did not raise this contention before the ALJ during the administrative hearing. Although she questioned Inspector Howard regarding certain investigative procedures, she raised no argument at the hearing level that the Executive Director had failed to satisfy Code section 7-12-050(a)'s totality-of-the-circumstances standard. Rather, she raised this argument for the first time in her Specification of Errors submitted to the circuit court following the ALJ's decision. The common law record establishes that at no point in front of the ALJ did Berrigan argue, as a distinct legal proposition, that CACC was required/failed to apply a "totality of the circumstances" standard in making the dangerous dog determination under Code section 7-12-050 (amended Jan. 27, 2021). She did not use or allude to that phrase, cite authority for such a standard, or present it as a legal defect in CACC's investigation or decision-making process.

¶ 39    It is well settled that if an argument, issue, or defense is not presented at the administrative hearing, it is procedurally defaulted and may not be raised for the first time on administrative review. *Cinkus*, 228 Ill. 2d at 212-13. Having failed to present this argument before the ALJ, Berrigan may not advance it on review. Although forfeiture is a limitation on the parties rather

than the court, no basis exists to overlook it here. This is not a case involving a miscarriage of justice, nor does it present a question whose resolution is necessary to maintain a sound and uniform body of precedent. See *Jill Knowles Enters., Inc. v. Dunkin*, 2017 IL App (2d) 160811, ¶ 22 (forfeiture is a limitation on the parties and not on the appellate court; the court can overlook forfeiture when necessary to obtain a just result or maintain a sound and uniform body of precedent). The ALJ already weighed the evidence of both parties and reached a reasoned determination on a fully developed record.

¶ 40    Even if she did advance the argument, the circuit court erred when reversing on this ground because the ALJ made no independent factual finding on the matter. A reviewing court must consider the administrative agency's findings of fact to be *prima facie* correct and must not reweigh the evidence or make independent factual findings. *See* 735 ILCS 5/3-110; *Hayes*, 359 Ill. App. 3d at 1160. In concluding that the investigation was "not thorough," the circuit court inserted its own independent factual finding for that of the agency, which is precisely what the Administrative Review Law aims to prohibit. Moreover, when a material factual question truly remains unaddressed, the proper remedy is not for the circuit court to make an independent factual determination, thereby supplanting the role of the agency, but rather to remand the matter to the agency for further proceedings. See *Burke v. Bd. of Rev.*, 132 Ill. App. 3d 1094, 1099 (1985).

¶ 41                                  III. CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the circuit court is reversed, and the judgment of the ALJ is affirmed.

¶ 43    Circuit court judgment reversed. ALJ decision affirmed.